**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| THOMAS LAURIA, Individually, and on Behalf of Himself and All Others Similarly Situated, | ) ) ) | **Civil Action No. 1:12-cv-00772** |
| Plaintiff, | ) ) ) | **Honorable Joan B. Gottschall** |
| v. | ) ) |  |
| BIOSANTE PHARMACEUTICALS, INC., and STEPHEN M. SIMES, | ) ) ) |  |
| Defendants. | ) ) ) ) |  |

**OPPOSITION OF THE BIOSANTE INVESTOR GROUP TO COMPETING MOTIONS
TO CONSOLIDATE RELATED ACTIONS; APPOINT LEAD PLAINTIFF; AND
<u>APPROVE CHOICE OF LEAD COUNSEL</u>**

Lead Plaintiff movant, the BioSante Investor Group ("BIG" or "Movant"), consisting of Michael O. Bopst, Guy L. Jacks, II, Patrick Lavoie, Quynh-Ly Pham, and George Pappaylion, respectfully submits this memorandum in further support of BIG's motion, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for appointment of BIG as lead plaintiff, and for approval of its selection of Kahn Swick & Foti, LLC ("KSF") and Brower Piven, A Professional Corporation ("Brower Piven"), as co-Lead Counsel, and Susman Heffner & Hurst LLP ("SHH") as Liaison Counsel for the Class, and in opposition to all competing motions.

Four competing lead plaintiff motions were submitted by the following movants: (1) the BioSante Investor Group (II) ("BIG II"), consisting of Avraham Shaked, Sue Benson, and Raymond Skubel, with claimed losses of $1,443,447.20; (2) Thomas Norgiel and Jeffrey

Rennell ("Norgiel and Rennell") with claimed losses of $843,842.42; (3) BIG, consisting of Michael O. Bopst, Guy L. Jacks, II, Quynh-Ly Pham, Patrick Lavoie, and George Pappaylion with claimed losses of $298,386.80; and (4) Mark Dale[1] ("Dale") with claimed losses of $73,683.72.

In making the determination of which investor to appoint as Lead Plaintiff, the PSLRA instructs this Court to adopt a presumption that the "most adequate plaintiff" is the person or group that "has the largest financial interest in the relief sought by the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), *and* "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In other words, in order to trigger the presumption, *both* of these statutory requirements must be met.

A review of the lead plaintiff submissions filed by the two movants with the claimed largest losses—BIG II and Norgiel and Rennell—reveals that these competing movants suffer from group cohesion problems and erroneous loss calculations that call into question their ability to meet both statutory requirements as mandated in order to trigger the lead plaintiff presumption in their favor.[2]

By contrast, BIG is a small, cohesive group that has suffered losses of approximately $298,386.80 as a result of its members' investments in BioSante Pharmaceuticals, Inc. ("BioSante" or the "Company") during the Class Period. BIG is a dedicated group of

---

[1] Movant Dale, with losses of merely $73,683.72, is the movant with the smallest losses and cannot trigger the rebuttable presumption in his favor, much less meet the statutory requirements to be appointed lead plaintiff.

[2] BIG II and Norgiel and Rennell have submitted joint declarations in an attempt to fulfill the requirement to be considered a valid group under the PSLRA, but their declarations are defective on their face because they contain testimony of each of the members of the groups swearing to information none of the declarants could know from personal knowledge. One person is not competent to swear under oath to the intent of another or to what another understands, believes or knows. "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006).

experienced investors who have chosen to come together to vigorously represent the Class as Lead Plaintiff and has chosen highly capable counsel. BIG's motion to appoint BIG as lead plaintiff and approve its selection of counsel should be granted.

## I.     ARGUMENT

### A.     BIG II Does Not Trigger Presumptive Lead Plaintiff Status Because of Group Cohesion Problems and Improper Certifications

While BIG II meets the first statutory requirement to trigger presumptive status (largest loss), BIG II does not meet the second requirement to trigger the presumption (Rule 23) because of group cohesion problems. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Courts have consistently required cohesion between members, especially when they have no pre-existing relationship. *Bang v. Acura Pharmaceuticals, Inc.*, No. C 5757, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11, 2011) (citing cases acknowledging that "a group of investors should be 'small and cohesive enough such that it can adequately control and oversee the litigation'") (citations omitted); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289 at *8 (N.D. Cal. Aug. 22, 2008); *see also Schriver v. IMPAC Mortg. Holdings, Inc.*, No. SACV 06-31 CJC, 2006 WL 6886020 at *8 (C.D. Cal. May 2, 2006) ("The Court agrees with *Gemstar* and other cases holding that groups of unrelated investors, while not per se impermissible lead plaintiffs under the PSLRA, are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation"); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-57 (S.D. Tex. 2002) (reviewing lead plaintiff group applications for those groups which affirmatively decided to work together and had agreed upon a decision-making structure).

Here, one member of BIG II—significantly, the member with the largest loss among all group members—was not even a signatory to the joint declaration signed by the other two group

members, wherein Benson and Skubel avowed their dedication and cooperation in litigating the matter. *See* Porritt Decl. at 5. Indeed, the declaration even concedes that Shaked, the missing third member of the group, did not attend the conference call with counsel where the respective responsibilities of counsel and lead plaintiffs were discussed. Shaked's absence from the conference call renders everything said and agreed-to during the conference meaningless, because not all group members were present to discuss the different roles and responsibilities of the parties. Moreover, the joint declaration suggests that Shaked *does not* agree to zealously represent the class in this litigation and calls into question whether a group was even formed to pursue this action in the first place. Another possible scenario is that Shaked did not want to sign the declaration because he wanted to litigate independently of the group, given that his losses overshadow those of the other two BIG II members. At minimum, Shaked's absence from the joint declaration indicates that there is no cohesion among the group in that all members have not agreed how to manage the litigation and to effectively and efficiently make decisions to advance the litigation.

In addition to cohesion problems, BIG II fails as a lead plaintiff candidate because one of its members, Raymond Skubel, did not sign his certification. Skubal's failure to provide proper plaintiff's certifications is a direct violation of the PSLRA and is fatal to his and his group's ability to represent the Class. 15 U.S.C. § 78u-4(a)(2)(A). "Each plaintiff seeking to serve as a representative party on behalf of a class **shall** provide a **sworn** certification, which **shall** be **personally signed** by such plaintiff and filed with the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(emphasis added). The failure to submit valid PSLRA certifications automatically disqualifies them as potential lead plaintiffs here. *See, e.g., In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *2 (N.D. Cal. Aug. 20, 2001) ("[A]ll proposed lead plaintiffs

must have submitted a sworn certification . . ."); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319 (N.D. Ala. 2000) ("Only those plaintiffs who satisfy the certification requirement of the [PSLRA] subsection can serve as lead plaintiff."). Since the PSLRA certification must be "sworn," 28 U.S.C. § 1746 governs its requirements; it provides that:

> ...., such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and **dated**, in substantially the following form: … "I declare (or **certify**, … that the foregoing is true and correct. Executed on (**date**). (**Signature**)". [Emphasis added].

Since the certification must be "personally signed" under the PSLRA, the only permissible way for the requirements of both the PSLRA and 28 U.S.C. § 1746 to be satisfied is by the filing of a **personally signed** and **dated** plaintiff's certification. Skubal's certification is not signed, and, therefore, he is not eligible to serve as lead plaintiff, and his group is also disqualified.

Alternatively, if the Court is inclined to find that BIG II is the presumptive lead plaintiff, limited discovery into the group's formation, ability and willingness to join together and manage the litigation and counsel is warranted due to this red flag. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery if they 'demonstrate[ ] a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iv)). BIG respectfully submits that these circumstances raise sufficient questions to warrant limited discovery. *See* 15 U.S.C. 78-u-4(a)(3)(B)(iv) (permitting discovery when movant demonstrates a "reasonable basis" for a finding that plaintiff is incapable of adequately representing class). *See also Brown v. Biogen*, No. 05-10801-RCL, 2005 U.S. Dist. LEXIS 19350, at *7-8 (D. Mass. July

26, 2005) (granting discovery of lead plaintiff movant); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp

2d 845, 847-48 (S.D. Ind. 1999) (granting limited discovery).

**B.    Norgiel and Rennell Do Not Trigger Presumptive Lead Plaintiff Status Because Their Loss Calculation Is Erroneous**

In accordance with the statutory requirements, because BIG II has not triggered

presumptive lead plaintiff status, the Court should next consider the movant with the purported

second-largest loss, which is the Norgiel and Rennell group.    Because the loss calculations in

Norgiel and Rennell's motion include multiple errors in the purchase prices of BioSante stock

during the Class Period, serious questions are raised regarding the accuracy of the Group's

certification.    Norgiel's trade data claims that he made purchases of 25,000 shares on November

17, 2011 at prices from $4.51 to $4.73; however, the highest value of BioSante stock on

November 17, 2011 was only $2.55, a nearly 100% increase over the true value!    Addressing a

nearly identical purchase inflation, one court found the exaggerated losses raise concerns over

the movant's adequacy:

> One of the proposed group, David Renzer, states in his affidavit that on "2/7" he purchased 2,500 shares of common stock of Websecure, Inc. at a price of $17.50 per share.    Information supplied by the plaintiffs about the stock's trading indicates, however, that on February 7, 1996, the stock closed, as it had the day before, at $9.50 per share.    The statement in the Renzer affidavit may thus be suspected of being inaccurate.    The inaccuracy may be explainable, but it cast sufficient doubt on Mr. Renzer's adequacy as a class representative plaintiff that he should be excluded from the group appointed to serve as lead plaintiffs."

*Nager v. Websecure*, *Inc.*, No. CIV.A 97-10662, 1997 WL 773717 at *1 at n. 1 (D. Mass. Nov.

26, 1997) (internal citations omitted).    The demonstrably erroneous trading data for Norgiel

indicates that the ultimate loss calculation for the group is plainly wrong.    Given these clear

errors, the presumption is not triggered in Norgiel's and Rennell's favor.

In the alternative, in the event the Court is inclined to apply presumptive status to Norgiel and Rennell, BIG respectfully requests that all competing movants should be allowed limited discovery to assess the scope of the inaccuracies in the loss figure and certifications for Norgiel and Rennell's motion.

Additionally, Norgiel and Rennell calculate their losses on a first-in-first-out ("FIFO") basis, which many courts, including this one, have found to be a less appropriate method of calculating losses than the last-in-first-out ("LIFO") method. *See Hill v. The Tribune Co.*, No. 05 C 2602, 2005 WL 3299144 at *2 (N.D. Ill. Oct. 13, 2005) (finding that the majority view "is that security fraud losses should be calculated using LIFO."); *see also In re Comdisco Sec. Litig.*, No. 01 C 2110, 2004 WL 905938 (N.D. Ill. Apr. 26, 2004). Under the LIFO methodology Norgiel and Rennell's losses decrease by over $160,000, not counting the aforementioned inflation due to inaccuracies with the purchase values of Norgiel's stock.

Thus, the lead plaintiff presumption is not triggered in favor of Norgiel and Rennell.

### C. BIG Meets the Requirements To Trigger the Statutory Presumption and Should Be Appointed Lead Plaintiff

Under the statutory formula, because the presumption is not triggered by BIG II or Norgeil and Rennell, the Court should next consider the lead plaintiff movant with the next largest claimed loss: BIG. BIG meets the requirements to trigger the presumption because it has the next largest financial interest in the outcome of the litigation and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B).

BIG easily satisfies both the typicality and adequacy requirements of Rule 23. The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the "same event or course of conduct that gives rise to the claims of other class members and [its] claims are based on the same legal theory. *De La Fuente v. Stokely-Van*

*Camp, Inc.*, 713 F.3d 225, 232 (7th Cir. 1983). BIG satisfies the typicality requirement of Rule 23 because, just like all other class members, its members: (1) purchased BioSante securities during the Class Period at artificially inflated prices; and (2) suffered damages thereafter when the truth was revealed and the artificial inflation was removed from the price of the stock. Thus, BIG's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B). Here, BIG fairly and adequately protects the interests of the class. As a preliminary matter, because BIG's claims are identical to the claims of other Class members, there is no evidence of antagonism between its interests and those of the proposed Class members. Thus, BIG's interests are clearly aligned with those of the members of the Class.

Furthermore, in contrast to BIG II's so-called "joint" declaration signed only by two of its three purported members, each member of BIG signed a declaration acknowledging their obligations as lead plaintiffs and potential class representatives, and avowing group cooperation to actively, diligently, and competently discharge their responsibilities in litigating this matter. *See* Declarations of Michael O. Bopst, Guy L. Jacks, II, Quynh-Ly Pham, Patrick Lavoie, and George Pappaylion In Support of the Motion of the BioSante Investor Group to Consolidate Related Actions; To Be Appointed Lead Plaintiff; and To Approve Proposed Lead Plaintiff's Choice of Counsel (hereinafter collectively, "Decls.") at 2. And, BIG has collectively selected as

proposed class counsel attorneys with extensive experience in successfully prosecuting securities class actions.

As illustrated in the previously-submitted declarations, BIG is a small, cohesive group of sophisticated investors who will assertively and collaboratively direct counsel in this litigation. Decls. at 1. Moreover, through the professional experiences of its individual members, BIG brings a solid understanding of the intricate business and medical issues involved in the litigation.

In addition to their extensive investment experience, BIG's members bring a professional background in business and science. The group includes a nuclear engineer, Mr. Jacks, who brings an informed scientific perspective to an action involving misrepresentations regarding pharmaceutical products and biotechnology. Jacks Decl. at 1. Mr. Jacks also possesses an MBA, which can better help the group understand the business issues arising from the claims. *Id*. Adding to the group's business experience is Mr. Lavoie, who is an accountant and vice president of finance for a manufacturing company. Lavoie Decl. at 1.

As noted in their declarations, prior to the filing of their motion, the members of BIG spoke with each other and their selected counsel by telephone and agreed to move together to be appointed lead plaintiff. Decls. at 3. Further, BIG has a plan in place to effectively direct counsel, manage the litigation, and actively represent the interests of the Class. Decls. at 2. If selected as Lead Plaintiffs, the members of BIG will meet regularly with and/or without counsel to discuss the progress of the litigation and to approve the strategies recommended by counsel. Decls. at 2-3. Finally, BIG members have a plan to share decision-making responsibilities, and in the event that an emergency arises in the course of litigation, the members have selected Mr. Bopst to serve as BIG spokesperson and decision-maker. Decls. at 3. Because BIG triggers

presumptive lead plaintiff status, competing movants must rebut this presumption with proof of inadequacy and they cannot do so.

For the foregoing reasons, BIG's motion for appointment as Lead Plaintiff and approval of its selection of Lead Counsel KSF and Brower Piven, and Liaison Counsel SHH, should be granted and all competing motions should be denied

DATED:        April 20, 2012            Respectfully submitted,

                                        SUSMAN HEFFNER & HURST LLP

                                        s/ Matthew T. Heffner

                                        Matthew T. Heffner
                                        30 N. Lasalle, Suite 1210
                                        Chicago, Illinois 60602
                                        Telephone: (312) 346-3466
                                        Facsimile: (312) 346-2829
                                        Email: mheffner@shhllp.com

                                        *Counsel for BioSante Investor Group and Proposed
                                        Liaison Counsel for the Class*

                                        DAVID A.P. BROWER
                                        **BROWER PIVEN**
                                        A Professional Corporation
                                        488 Madison Avenue, 8th Floor
                                        New York, NY 10004
                                        Telephone: (212) 501-9000

                                        KIM E. MILLER
                                        **KAHN SWICK & FOTI, LLC**
                                        500 Fifth Avenue, Ste. 1810
                                        New York, NY 10110
                                        Telephone: (212) 696-3730
                                        Facsimile: (504) 455-1498
                                        Email: kim.miller@ksfcounsel.com

                                        and

                                        LEWIS S. KAHN
                                        **KAHN SWICK & FOTI, LLC**

206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

*Counsel for BioSante Investor Group and Proposed
Co-Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

/s/ Matthew T. Heffner

MATTHEW T. HEFFNER