IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS LAURIA, on Behalf of Himself and All Others Similarly Situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:12-cv-00772 |
| v. | ) ) | **CLASS ACTION** |
| BIOSANTE PHARMACEUTICALS, INC. and STEPHEN M. SIMES | ) ) ) | |
| Defendants. | ) ) ) ) | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THOMAS NORGIEL AND JEFFREY RENNELL FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO ALL OTHER COMPETING MOTIONS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.  SHAKED, BENSON AND SKUBEL ARE INELIGIBLE TO SERVE AS LEAD
    PLAINTIFFS BECAUSE THEY ARE PART OF AN ARTIFICIAL GROUP
    CREATED BY THEIR LAWYERS IN AN EFFORT TO GAME THE LEAD
    PLAINTIFF PROCESS ........................................................................................... 4

    A.  The Legal Standard for the Appointment of Lead Plaintiffs under PSLRA .............. 4

    B.  Shaked, Benson and Skubel Are An Incohesive Group of Unrelated
        Individuals ............................................................................................................ 5

II. SHAKED, BENSON AND SKUBEL ARE INDIVIDUALLY INELIGIBLE TO
    SERVE AS LEAD PLAINTIFFS ............................................................................ 9

    A.  Because Shaked, Benson and Skubel Only Moved To Be Appointed As
        Lead Plaintiff As A Group, They Are Not Eligible To Be Considered
        Individually ......................................................................................................... 9

    B.  Shaked, Benson and Skubel Each Failed To Make a Prima Facie Showing of
        Their Adequacy and Typicality ............................................................................ 10

    C.  Shaked, Benson and Skubel Are Inadequate Because They Have Failed To
        Properly Oversee Counsel ................................................................................... 12

III. LEVI & KORSINSKY, LLP IS INADEQUATE TO SERVE AS LEAD
     COUNSEL ............................................................................................................ 13

IV. NORGIEL AND RENNELL ARE THE PRESUMPTIVE LEAD PLAINTIFFS .......... 13

    A.  Norgiel and Rennell Have the Largest Financial Interest in the Litigation ............. 14

    B.  Norgiel and Rennell Satisfy the Relevant Requirements of Rule 23 ...................... 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Bally Total Fitness Sec. Litig.*,
No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) ...............................5, 6

*Bang v. Acura Pharm., Inc.*,
No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ...................................6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...............................................................................................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................10

*In re Comdisco Sec. Litig.*,
No. 01 C 2110, 2004 U.S. Dist. LEXIS 7230 (N.D. Ill. Apr. 26, 2004)..................................5

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................................9

*Culver v. City of Milwaukee*,
277 F.3d 908 (7th Cir. 2002) ...............................................................................................12

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) .........................................................................................13

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)...............6, 8

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................................5

*Frias v. Dendreon Corp.*,
No. C11-1291JLR, 2011 U.S. Dist. LEXIS 145762 (W.D. Wash. Dec. 19, 2011)..................8

*Goldberg v. PXRE Group, Ltd.*,
No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30, 2007) ..............7

*Hill v. Tribune Co.*,
No. 05 C 2602, 2005 U.S. Dist. LEXIS 23931 (N.D. Ill. Oct. 13, 2005) ................................5

*Keel v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ...............................................................................................14

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
No. 09-cv-0200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009) ..............9

ii

*Maiden v. Merge Techs., Inc.*,
No. 06-C-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006)......................4, 5, 6

*Mayo v. Apropos Techs., Inc.*,
No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924 (N.D. Ill. Feb. 7, 2002).............................10, 13

*In re Motorola Sec. Litig.*,
No. 03 C 287, 2003 U.S. Dist. LEXIS 12651 (N.D. Ill. July 23, 2003) ...................................5

*Niederklein v. PCS Edventures!.com, Inc.*,
No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247
(D. Idaho Feb. 24, 2011)...................................................................................................7, 9

*Richardson v. TVIA, Inc.*,
No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007).................5

*Tice v. Novastar Fin., Inc.*,
No. 04-0330-CV-W-ODS, 2004 U.S. Dist. LEXIS (W.D. Mo. Aug. 23, 2004) ......................6

*Topaz Realty v. Northfield Lab., Inc.*,
No. 06 C 1493, 2006 U.S. Dist. LEXIS 77613 (N.D. Ill. June 19, 2006) ............................5, 8

*Tsirekidze v. Syntax-Brillian Corp.*,
No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 7, 2008) ...........9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)...................................................................................7

*In re Vonage Initial Pub. Offering Sec. Litig.*,
No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 7, 2007) ...................... 11-12

*Winn v. Symons Int'l Group*,
No. IP 00-0310-C-B/S, 2001 U.S. Dist. LEXIS 3437 (S.D. Ind. Mar. 21, 2001)..............14,15

## STATUTES

15 U.S.C. § 78u-4 ..................................................................................................... passim

## OTHER AUTHORITIES

141 Cong. Rec. S17967 ...................................................................................................6

Fed. R. Civ. P. Rule 23 ............................................................................................ passim

Thomas Norgiel ("Norgiel") and Jeffrey Rennell ("Rennell") respectfully submit this memorandum of law in further support of their motion for appointment as Lead Plaintiffs and approval of Faruqi & Faruqi, LLP (the "Faruqi Firm") as their choice of Lead Counsel and Salas Wang LLC ("Salas Wang") as their choice of Liaison Counsel, and in opposition to all other competing motions.[1]

## INTRODUCTION

Presently pending before the Court are four competing motions seeking appointment as Lead Plaintiffs in the above-captioned securities class action (the "Action"),[2] which asserts claims for violations of federal securities laws against BioSante Pharmaceuticals, Inc. ("BioSante" or the "Company") and its chief executive officer.

Under Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, where multiple movants seek to be appointed lead plaintiff, Congress established a rebuttable presumption in favor of appointing the movant – the so-called "most adequate plaintiff" – who possesses the "largest financial interest" in the litigation and who also satisfies the requirements for class representatives under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1]    Capitalized terms not otherwise defined herein shall have the same meaning as those found in the Memorandum Of Law In Support of the Motion of Thomas Norgiel and Jeffrey Rennell for (1) Consolidation; (2) Appointment as Lead Plaintiffs; and (3) Approval of Lead Counsel ("Norgiel and Rennell Opening Br."), ECF No. 22. All ECF references herein shall refer to the *Lauria v. BioSante Pharmaceuticals, Inc.*, No. 1:12-cv-00772 docket, unless otherwise noted.

[2]    Norgiel and Rennell originally moved to consolidate the *Lauria* Action with *Palanisamy v. BioSante Pharm., Inc.*, No. 1:12-cv-01215. However, as Palanisamy has voluntarily dismissed his action, consolidation is no longer necessary. *See Palanisamy v. BioSante Pharm., Inc.*, No. 1:12-cv-01215, ECF No. 10.

Courts routinely look to the size of the movant's losses to determine who has the "largest financial interest" in the litigation. The four competing movants, in order from largest to smallest losses, are as follows:

| MOVANTS | LOSSES |
|---|---|
| ➢ Avraham Shaked ("Shaked") | $1,167,194.63 |
| ➢ Sue Benson ("Benson") | $135,090.00 |
| ➢ Raymond Skubel ("Skubel") | $141,192.61 |
| **BioSante Investor Group #1** | **$1,443,477.24[3]** |
| ➢ Thomas Norgiel | $498,305.51 |
| ➢ Jeffrey Rennell | $345,536.91 |
| **Norgiel and Rennell** | **$843,842.42[4]** |
| ➢ Michael O. Bopst | $59,436.60 |
| ➢ Guy L. Jacks, II | $45,012.63 |
| ➢ Patrick Lavoie | $99,825.77 |
| ➢ Quynh-Ly Pham | $54,831.37 |
| ➢ George Pappaylion | $55,203.00 |
| **BioSante Investor Group #2** | **$314,409.37[5]** |
| **Mark Dale** | **$73,683.72[6]** |

---

[3]     *See* Declaration of Nicholas I. Porritt (Porritt Decl.), ECF No. 16-1, Ex. B. Two groups purport to be the BioSante Investor Group. For the purposes of distinguishing them, we renamed them BioSante Investor Group #1 and BioSante Investor Group #2.

[4]     *See* ECF Nos. 22-4, 22-5.

[5]     The BioSante Investor Group #2's damages were recalculated using the last-in, first-out ("LIFO") and first-in, first-out ("FIFO") methodology for an apples-to-apples comparison between the movants. *See* Declaration of Jeffrey M. Salas ("Salas Decl.), filed April 20, 2012, Exs. A-B.

[6]     Memorandum of Law in Support of Mark Dale's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel, ECF No. 14, at 4.

Thus, Shaked, Benson and Skubel purport to have the largest financial interest of any movant, with Norgiel and Rennell next in line. Although Shaked, Benson and Skubel argue that their purported losses should be aggregated for the purposes of determining the size of their financial interest, it is well established, however, that the PSLRA requires lead plaintiff groups to be cohesive and controlled by its members – not its lawyers. Shaked, Benson and Skubel are the antithesis of such a group as they were cobbled together by their counsel (before counsel knew what the pecking order would be) in an effort to become the biggest loser under the PSLRA's "largest financial interest" test. In fact, Shaked, Benson and Skubel lack a pre-litigation relationship and only Benson and Skubel signed a joint declaration expressing their willingness to work as part of a group. As for Shaked, there is no evidence that he was ever aware of the existence of Benson or Skubel, or that they were filing a joint application.

Moreover, Shaked, Benson and Skubel are unsuitable class representatives under Rule 23 because they failed to make a proper evidentiary showing of their typicality and adequacy to represent the Class. Specifically, they submitted defective certifications that failed to provide basic information required by the PSLRA in order for the Court to assess their qualifications. Shaked, Benson and Skubel are likewise unsuitable under Rule 23 because they failed to monitor the conduct of their chosen counsel, Levi Korsinsky, LLP ("L&K"), as evidence by the lawyer-driven nature of their motion. Indeed, as L&K has engaged in the kind of lawyer-driven litigation that the PSLRA was designed to prevent, L&K is itself inadequate to represent the Class as Lead Counsel.

By contrast, Norgiel and Rennell, with losses of $843,842.42, have the largest financial interest in the litigation of any movant who also satisfies the requirements of Fed. R. Civ. P. 23. Norgiel and Rennell have filed the requisite PSLRA certifications that establish their typicality

and adequacy. Additionally, Norgiel and Rennell have filed a joint declaration that establishes

that they are small and cohesive group of investors, that they have a longstanding business and

social relationship that predates their motion, and that they have jointly made the decision to

represent the class. Indeed, the interests of Norgiel and Rennell are perfectly aligned with, and

in no way antagonistic to, the interests of the Class. Lastly, Norgiel and Rennell retained counsel

experienced in the prosecution of complex class actions to serve as lead counsel, who in turn has

acted diligently to advance their motion and protect the Class.

For these reasons and those explained below, Norgiel and Rennell are the presumptive

lead plaintiffs, and they respectfully request that the Court grant their motion to be appointed

Lead Plaintiffs, and approve their selection of the Faruqi Firm as Lead Counsel and Salas Wang

as Liaison Counsel.

## ARGUMENT

I. **SHAKED, BENSON AND SKUBEL ARE INELIGIBLE TO SERVE AS LEAD PLAINTIFFS BECAUSE THEY ARE PART OF AN ARTIFICIAL GROUP CREATED BY THEIR LAWYERS IN AN EFFORT TO GAME THE LEAD PLAINTIFF PROCESS**

### A. The Legal Standard for the Appointment of Lead Plaintiffs under PSLRA

Under the PLSRA, this Court is directed to "appoint as lead plaintiff the member or

members of the purported plaintiff class that the court determines to be most capable of

adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *Maiden*

*v. Merge Techs., Inc.*, No. 06-C-349, 2006 U.S. Dist. LEXIS 85635, at *6-7 (E.D. Wis. Nov. 21,

2006). Further, the PLSRA establishes a rebuttable presumption that the "most adequate

plaintiff" is the movant that "has the largest financial interest in the relief sought by the class,"

and who also satisfies the requirements of Rule 23 for class representatives. 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(bb)-(cc); *Merge Techs.*, 2006 U.S. Dist. LEXIS 85635, at *7.

While the PSLRA does not prescribe a methodology for calculating a plaintiff's financial interest, most courts (including those in this district) typically consider the following four factors: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate loss suffered. *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *14-15 (N.D. Ill. Mar. 15, 2005) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997)). The most critical among these factors is the approximate loss suffered.[7] *See, e.g., Merge Techs.*, 2006 U.S. Dist. LEXIS 85635, at *8-9; *In re Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *13-15 (collecting cases); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on . . . the approximate loss suffered by the movant.") (citations omitted); *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *13-14 (N.D. Cal. Apr. 16, 2007) ("[C]ourts consider the fourth factor, the approximate loss suffered, as the most determinative in identifying the plaintiff with the largest financial loss.").

## B. Shaked, Benson and Skubel Are An Incohesive Group of Unrelated Individuals

One of the principal legislative "purposes behind the PSLRA is to prevent 'lawyer-driven' litigation." *In re Motorola Sec. Litig.*, No. 03 C 287, 2003 U.S. Dist. LEXIS 12651, at

---

[7]     In calculating losses, most courts use the LIFO and/or FIFO accounting methodologies to match sales of shares with pre-existing holdings. *See, e.g.*, *Hill v. Tribune Co.*, No. 05 C 2602, 2005 U.S. Dist. LEXIS 23931, at *9-11 (N.D. Ill. Oct. 13, 2005) (analyzing financial interest under LIFO); *In re Comdisco Sec. Litig.*, No. 01 C 2110, 2004 U.S. Dist. LEXIS 7230, at *5-8 (N.D. Ill. Apr. 26, 2004) (same).  *But see Topaz Realty v. Northfield Lab., Inc.*, No. 06 C 1493, 2006 U.S. Dist. LEXIS 77613, at *11 (N.D. Ill. June 19, 2006) (using the "number of shares an individual held on the day the market learned of the alleged fraud" to determine the movants' financial interest).

*8-9 (N.D. Ill. July 23, 2003); *Merge Techs.*, 2006 U.S. Dist. LEXIS 85635, at *10. The PSLRA

was therefore enacted to place "investors, and not lawyers, in control of the lawsuit." 141 Cong.

Rec. S17967, 17969 (Sen. Domenici). Thus, although the PSLRA allows for multiple class

"members" to be appointed lead plaintiffs, see 15 U.S.C. § 78u-4(a)(3)(B)(i), courts are divided

on whether to allow the aggregation of unrelated investors as a group when appointing lead

plaintiffs. *Compare In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS

6243, at *7-13 (N.D. Ill. Mar. 15, 2005) (concluding that courts that allow lawyers to designate

"members of the group [that] do not share business or other relationships independent of the

lawsuit" as lead plaintiffs "would create a powerful incentive for lawyers competing to represent

the class to solicit clients" that is "not consistent with the structure and purpose of the PSLRA"),

*with Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at *7-8 (N.D. Ill.

Jan. 11, 2011) (allowing a "small group[] of investors to act as lead plaintiff even if they do not

have pre-existing relationships" so long as the group is cohesive).

The position most consistent with the policy goals of the PSLRA is a bright line rule that

prevents a group of unrelated individuals from being appointed as lead plaintiffs. *See, e.g.*,

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at

*25 (N.D. Cal. Aug. 22, 2008) ("[I]gnoring the basis of the group formation and appointing a

group of unrelated investors undercuts the primary purpose of the PSLRA to eliminate lawyer-

driven litigation."); *Tice v. Novastar Fin., Inc.*, No. 04-0330-CV-W-ODS, 2004 U.S. Dist.

LEXIS, at *19 (W.D. Mo. Aug. 23, 2004) (concluding that "granting a request to appoint an

unrelated group of investors would violate the purpose behind the PSLRA, which includes the

prevention of lawyer-driven litigation").

That said, even those courts which permit unrelated investors to serve as lead plaintiffs nonetheless require "an evidentiary showing" that its members "will be able to function cohesively and [will] effectively manage the litigation apart from their lawyers before [being] designated as presumptive lead plaintiffs." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (citations and quotations omitted); *see also Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *26 (D. Idaho Feb. 24, 2011) ("To remain consistent with the purposes of the PSLRA's lead plaintiff provisions, the Court concludes that a pre-existing relationship or evidence of cohesion between or among members of the group seeking appointment as lead plaintiff is essential.").

Under either test, the motion of Shaked, Benson and Skubel should be denied. Counsel submitted a perfunctory "joint" declaration ostensibly in an attempt to establish that although Shaked, Benson and Skubel are unrelated, they are at least cohesive. Porritt Decl., ECF No. 16-1, Ex. E. However, the joint declaration raises more questions than it answers. First, the "joint" declaration is only on behalf of Benson and Skubel. Thus, there is no evidence that Shaked ever agreed to, or even knows about, the joint application or the other members of the group. *See Goldberg v. PXRE Group, Ltd.*, No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925, at *13–15 (S.D.N.Y. Mar. 30, 2007) (rejecting a group whose members only "share[d] this lawsuit in common" and the "apparently unrelated plaintiffs" were brought together as a result of the "type of lawyer-driven action that the PSLRA eschews"). If the group were for that matter cohesive, it stands to reason that all three members would have been able to sign the declaration and make clear that they selected their counsel and not vice versa.

Second, the joint declaration confirms that there is no pre-existing relationship among group members, as they are not family, friends, business partners or members of an investing group. *Topaz Realty*, 2006 U.S. Dist. LEXIS 77613, at *11 (rejecting a group, in part, because there was "no independent connection – such as a family connection or members in the same investment group – that would suggest they could, as a group, adequately and cohesively make decisions for the class and supervise counsel").

Third, the joint declaration's conclusory statements and generalizations that Benson and Skubel are "sophisticated individual investors" that "will continue to maintain contact with [their] counsel and with each other in order to discuss and monitor the litigation as it progresses" says nothing about their ability to act cohesively and oversee counsel.[8] Porritt Decl., ECF No. 16-1, Ex. E, at ¶¶ 3, 10; *Frias v. Dendreon Corp.*, No. C11-1291JLR, 2011 U.S. Dist. LEXIS 145762, at *18-20 (W.D. Wash. Dec. 19, 2011) (concluding that conclusory statements such as the group's ability to "'communicate, individually or as a group, with each other and counsel' . . . [has] little or no substance and do not further the position of this otherwise unrelated group of individuals as an adequate class representative"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *26-27 (concluding that claims such as "sophisticated institutional investors" who are "committed to working closely with class counsel" without further explanation failed to provide evidence of the group's cohesion). As for Shaked, there is simply no evidence whatsoever as to his sophistication or ability to oversee counsel.

---

[8] By contrast, the joint declaration Norgiel and Rennell establishes they "have been friends and co-workers for ten years [who] often discuss various investment opportunities together, including [their] investment in BioSante common stock," have extensive pharmaceutical experience, and that due to their "pre-existing relationship, [they] decided to file a joint application to be appointed Lead Plaintiffs." ECF No. 22-6, at ¶¶ 3-5.

Therefore, as it is clear that Shaked, Benson and Skubel are not related or a cohesive group with an existence apart from their lawyers, they are inadequate to represent the Class.

## II. SHAKED, BENSON AND SKUBEL ARE INDIVIDUALLY INELIGIBLE TO SERVE AS LEAD PLAINTIFFS

### A. Because Shaked, Benson and Skubel Only Moved To Be Appointed As Lead Plaintiff As A Group, They Are Not Eligible To Be Considered Individually

Shaked, Benson and Skubel sought lead plaintiff appointment solely as a group. *See* Memorandum of Law in Support of Motion of BioSante Investor Group For Consolidation of the Related Actions, Appointment As Lead Plaintiff and Approval of Its Selection of Lead Counsel, ECF No. 16, at 1. Hence, they are now ineligible for consideration to be appointed as lead plaintiffs on an individual basis. *See, e.g.*, *PCS Edventures!.com, Inc.*, 2011 U.S. Dist. LEXIS 18247, at *26 (refusing to consider individual members for appointment as lead plaintiff where the group's members failed to request in their motion that they also wished to be considered individually); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-0200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *17 (D. Colo. May 4, 2009) (refusing to appoint "one individual out of an otherwise inadequate group in order to salvage lead plaintiff status"); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 7, 2008) (declining to consider individual member of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) (declining to consider individual member of group as lead plaintiff candidate because the member "was not presented as a prospective lead plaintiff on its own, however, and its moving papers do not demonstrate why it would be a suitable lead plaintiff even if its group were to be rejected").

### B. Shaked, Benson and Skubel Each Failed To Make a Prima Facie Showing of Their Adequacy and Typicality

For a class member to be appointed lead plaintiff, the PSLRA requires that the class member make a prima facie evidentiary showing of his or her typicality and adequacy. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (concluding that the initial Rule 23 analysis under the PSLRA focuses on "whether the movant has made a prima facie showing of typicality and adequacy"). Typically, a movant's sworn certification, such as those submitted by Norgiell and Rennell, demonstrates his or her typicality and adequacy to represent the class. *See Mayo v. Apropos Techs., Inc.*, No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924, at *9-10 (N.D. Ill. Feb. 7, 2002) (movant's certification evidenced adequacy to serve as lead plaintiff); *Kokkinis v. Aegean Marine Petroleum* Network, No. 11 Civ. 0917 (BSJ) (JCF), 2011 U.S. Dist. LEXIS 54939, at *4 (S.D.N.Y. May 19, 2011) (same).

This is so because the PSLRA requires that

> [e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that –
>
> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
>
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
>
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
>
> **(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint**;
>
> **(v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff *has sought* to serve as a representative party on behalf of a class**; and

10

(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

15. U.S.C. § 78u-4(a)(2)(A)(i)-(vi) (emphasis added).

Notwithstanding the statutory requirements for certifications, Shaked failed to list his BioSante securities transactions during the class period. *See* Porritt Decl., ECF No. 16-1, Ex. A, at ¶ 4; 15 U.S.C. § 78u-4(a)(2)(A)(iv) (as set forth above). Instead, the certification lists "676,057" as the "Number of Shares Purchased or Sold" – it is not clear which – and the certification likewise fails to disclose the dates, purchase prices, or sales prices for all of his transactions. Although L&K attached a spreadsheet that may or may not list Shaked's BioSante transactions, the attachment is not evidence in the same way that a sworn certification is. *See, e.g.*, ECF No. 22-3, Ex. B, at ¶ 5 (stating that "Plaintiff's transactions in BioSante . . . that are subject of the complaint during the class period specified in the complaint are set forth ***in the chart attached hereto***") (emphasis added). Additionally, Shaked's certification failed to disclose whether he ***sought to serve*** as a class representative within the last three years. *See* Porritt Decl., ECF No. 16-1, Ex. A, ¶ 5 (only stating that "[w]ithin the last 3 years, I have ***not served*** as a class representative in any federal securities case"); 15 U.S.C. § 78u-4(a)(2)(A)(v) (emphasis added) (set forth above). These omissions are significant as Congress required these disclosures in an effort to ferret out the kind of lawyer-driven abuse that led to the enactment of the PSLRA.

Similarly, Skubel's certification also fails to disclose whether he sought to serve as a class representative within the last three years. More importantly, his certification is fatally flawed because the signature is typed in and therefore is unsigned and unsworn.[9] *See* Porritt Decl., ECF No. 16-1, Ex. A; *see also In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-177

---

[9]    *See* Porritt Decl., ECF No. 16-1, Ex. A.

(FLW), 2007 U.S. Dist. LEXIS 66258, at *27 n.8 (D.N.J. Sept. 7, 2007) (concluding that movant was inadequate, in part, because his "initial certification was [suspiciously] plagued with misinformation . . . [as] it was signed with a 'quick signature' while his subsequent amended certification contained his full signature").

Finally, Benson's certification like the others in her group does not disclose whether she sought to serve as a class representative.[10]

Under the circumstances, Shaked, Benson and Skubel have failed to make a prima facie showing that they satisfy the requirements of Rule 23 and the PSLRA for class representatives.

### C.      Shaked, Benson and Skubel Are Inadequate Because They Have Failed To Properly Oversee Counsel

In determining the presumptive most adequate plaintiff, the court must take into account whether the proposed lead plaintiff "otherwise satisfied the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  One of these requirements is whether the plaintiff and his or her chosen counsel will "fairly and adequately represent the interests of the class."  *See* Fed. R. Civ. P. Rule 23(a)(4).  "For the purposes of determining whether the class representative is an adequate representative of the class, the performance of the class lawyer is inseparable from that of the class representative.  This is so because even when the class representative has some stake . . . it is usually very small in relation to the stakes of the class as a whole, magnifying the role of the class lawyer and making him . . . realistically a principal."  *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002).

Here, the acquiescence of Shaked, Benson and Skubel to a lawyer-driven arrangement merely confirms that they are collectively and individually inadequate to oversee counsel during

---

[10]      *See* Porritt Decl., ECF No. 16-1, Ex. A.

this litigation. Their inability to push back against their attorneys is precisely the kind of weakness that can lead to a settlement that is more favorable to their counsel than the class. Thus, Shaked, Benson and Skubel are inadequate under Rule 23 to serve as class representatives.

## III. LEVI & KORSINSKY, LLP IS INADEQUATE TO SERVE AS LEAD COUNSEL

The Court is not required to rubber stamp a movant's selection of lead counsel. *See Apropos Techs.*, 2002 U.S. Dist. LEXIS 1924, at *16-19 (refusing to appoint the presumptive lead plaintiff's preferred lead counsel). Here, L&K should not profit from lawyer-driven conduct that the PSLRA was enacted to prevent. *See supra* Part I.B; *see also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 57-58 (S.D.N.Y. 1997) ("One of the principal legislative purposes of the [Reform Act] was to prevent lawyer-driven litigation."). Thus, even if the Court were inclined to disaggregate Shaked, Benson and Skubel, and consider Shaked individually because he has the largest individual loss, the Court is not required to reward L&K by appointing it as Lead Counsel.

## IV. NORGIEL AND RENNELL ARE THE PRESUMPTIVE LEAD PLAINTIFFS

If the movant with the largest financial interest in the litigation fails to satisfy Rule 23's requirements, the PSLRA directs the Court to appoint the movant with the next largest financial loss, namely Norgiel and Rennell, so long as they satisfy Rule 23's typicality and adequacy requirements. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Since Shaked, Benson and Skubel are inadequate to serve as lead plaintiff on an aggregated or disaggregated basis, see *supra* Part I-II, Norgiel and Rennell are therefore entitled to invoke the most adequate plaintiff presumption due to their financial stake in the litigation and the fact that they have made a prima facie showing that they satisfy the relevant criteria to serve as class representatives.

### A.     Norgiel and Rennell Have the Largest Financial Interest in the Litigation

As illustrated in the chart above,[11] Norgiel and Rennell have the second largest loss of any movant.  In fact, the losses of Norgiel and Rennell vastly exceed the losses of the next closest movant, whether calculated on a LIFO or FIFO basis.  Accordingly, since Norgiel and Rennell have the greatest financial interest in the litigation of the remaining movants, they are presumed to be the "most adequate plaintiff" if they otherwise satisfy the requirements of Rule 23.

### B.     Norgiel and Rennell Satisfy the Relevant Requirements of Rule 23

Having established that they possess the largest financial interest out of the remaining movants, Norgiel and Rennell are entitled to invoke the most adequate plaintiff presumption if they made a prima facie showing that they satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Winn v. Symons Int'l Group*, No. IP 00-0310-C-B/S, 2001 U.S. Dist. LEXIS 3437, at *15 (S.D. Ind. Mar. 21, 2001) ("To appoint lead plaintiffs, courts examine only typicality and adequacy from the list of 'prerequisites to a class action' set forth in Rule 23(a).") (citation omitted).

To that end, Norgiel and Rennell submitted the certifications required by the PSLRA in connection with their motion.  *See* ECF No. 22-3; 15 U.S.C. § 78u-4(a)(2).  As evidenced thereby, the claims of Norgiel and Rennell are typical of the claims of the Class because they purchased BioSante common stock at prices that were artificially inflated by the Defendants' alleged misconduct.  *See, e.g.*, *Keel v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) ("[P]laintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.")

---

[11]     *See supra* Introduction, at 2.

(citation omitted); *Winn*, 2001 U.S. Dist. LEXIS 3437, at *16 (finding typicality where plaintiff's claim arises from the same events and is pursued under the similar legal theories as the claims of all other class members). Moreover, the claims of Norgiel and Rennell are not subject to any unique defenses that are not applicable to the members of the Class as a whole.

Norgiel and Rennell have also demonstrated that they satisfy the adequacy requirement of Rule 23 by moving for lead plaintiff, filed the requisite certifications and a joint declaration establishing their qualifications, and selecting counsel – the Faruqi Firm and Salas Wang – with the requisite skills, experience, and competence to prosecute the Action vigorously and efficiently in the best interests of the Class. Norgiel and Rennell Opening Br., at 2, 8-11. Further, Norgiel and Rennell are pharmaceutical sales representatives with a background in the industry and who have a pre-existing relationship that demonstrates their ability to prosecute this case jointly to maximize the recovery for the Class. *Id.* at 10-11. Thus, there can be no doubt that Norgiel and Rennell satisfy the adequacy requirement of Rule 23.

Consequently, Norgiel and Rennell are the presumptive lead plaintiffs. In order to overcome the strong presumption in favor of appointing Norgiel and Rennell as Lead Plaintiffs, the PSLRA requires "proof" that Norgiel and Rennell are either inadequate or atypical to serve as Lead Plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists here, and, therefore, Norgiel and Rennell should be appointed Lead Plaintiffs in the Action.

## CONCLUSION

Because Norgiel and Rennell have the largest financial interest in the Action and having made a proper evidentiary showing that they satisfy the typicality and adequacy requirements of Rule 23, their motion should be granted in its entirety.

Dated:  April 20, 2012

Respectfully submitted,

By: */s/ Jeffrey M. Salas*

**SALAS WANG LLC**
Jeffrey M. Salas
155 North Wacker Drive
Suite 4250
Chicago, IL 60606
Tel: 312-803-4963
Fax: 312-244-3151
Email: jsalas@salaswang.com

*Attorneys for Proposed Lead Plaintiffs Thomas
Norgiel and Jeffrey Rennell and Proposed Liaison
Counsel for the Class*

**FARUQI & FARUQI, LLP**
Richard W. Gonnello (pro hac admission pending)
Francis P. McConville
Steven Bentsianov
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: rgonnello@faruqilaw.com
       fmcconville@faruqilaw.com
       sbentsianov@faruqilaw.com

*Attorneys for Proposed Lead Plaintiffs Thomas
Norgiel and Jeffrey Rennell and Proposed Lead
Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2012, I electronically filed a copy of the Memorandum Of Law In Further Support Of The Motion Of Thomas Norgiel And Jeffrey Rennell For Appointment As Lead Plaintiff And In Opposition To All Other Competing Motions via ECF on all counsel of record.

*/s/ Jeffrey M. Salas*
Jeffrey M. Salas

**Counsel for Plaintiff and Movant Mark Dale**:

Amelia S. Newton
Heidi E. VonderHeide
Leigh Lasky
Norman Rifkind
**LASKY & RIFKIND, LTD.**
351 W. Hubbard Street, Suite 401
Chicago, IL 6064
Tel: (312) 634-0057
Fax: (312) 634-0059
E-mail: newton@laskyrifkind.com
        vonderheide@laskyrifkind.com
        lasky@laskyrifkind.com
        rikind@laskyrifkind.com

Brian J. Robbins
Gregory Del Gaizo
Conrad B. Stephens
**ROBBINS UMEDA LLP**
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 525-3990
Fax: (619) 525-3991
E-mail: brobbings@robbinsumeda.com
        gdelgaizo@robbinsumeda.com
        cstephens@robbinsumeda.com

17

*Counsel for BioSante Investor Group #1*

Vincent L. DiTommaso
Peter Lubin
**DITOMASSO LUBIN, P.C.**
17 W. 220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
Tel: (630) 333-0000
Fax: (630) 333-0333
E-mail: vdt@ditommasolaw.com
  psl@ditommasolaw.com

Nicholas I. Porritt
Thomas M. Gottschlich
**LEVI KORSINSKY LLP**
1101 30th Street NW, Suite 115
Tel: (202) 425-4291
Fax: (202) 333-2121
E-mail: nporritt@zlk.com
  tgottschlich@zlk.com

Eduard Korsinsky
Eric Andersen
**LEVI KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
E-mail: ek@zlk.com
  eandersen@zlk.com

*Counsel for BioSante Investor Group #2*

Matthew T. Heffner
**SUSMAN HEFFNER & HURST LLP**
30 N. Lasalle, Suite 1210
Chicago, IL 60602
Tel: (312) 346-3466
Fax: (312) 346-2829
E-mail: mheffner@shhllp.com

David A.P. Bower
**BROWER PIVEN**
A Professional Corporation
488 Madison Avenue, 8th Floor
New York, NY 10004

18

Tel: (212) 501-9000
Fax: (212) 501-0300
E-mail: brower@browerpiven.com

Kim E. Miller
**KAHN SWICK & FOTI, LLC**
500 Fifth Avenue, Suite 1810
New York, NY 10110
Tel: (212) 696-3730
Fax: (504) 455-1498
E-mail: kim.miller@ksfcounsel.com

And

Lewis S. Kahn
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Tel: (504) 455-1400
Fax: (504) 455-1498

*Counsel for Defendants*

Carl E. Volz
David H. Kistenbroker
Ashley John Burden
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe Street
Chicago, IL 60661
Tel: (312) 902-5362
Fax: (312) 577-4729
E-mail: carl.volz@kattenlaw.com
        david.kistenbroker@kattenlaw.com
        Ashley.burden@kattenlaw.com