# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| THOMAS LAURIA, Individually, and on Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| | ) | **Civil Action No. 1:12-cv-00772** |
| Plaintiff, | ) ) | |
| | ) | **Honorable Joan B. Gottschall** |
| v. | ) ) | |
| BIOSANTE PHARMACEUTICALS, INC., and STEPHEN M. SIMES, | ) ) ) | |
| Defendants. | ) ) ) | |

## REPLY OF THE BIOSANTE INVESTOR GROUP TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL

Lead Plaintiff movant, the BioSante Investor Group ("BIG" or "Movant"), consisting of Michael O. Bopst, Guy L. Jacks, II, Patrick Lavoie, Quynh-Ly Pham, and George Pappaylion, respectfully submits this memorandum in further support of BIG's motion, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for appointment of BIG as lead plaintiff, and for approval of its selection of Kahn Swick & Foti, LLC ("KSF") and Brower Piven, A Professional Corporation ("Brower Piven"), as co-Lead Counsel, and Susman Heffner & Hurst LLP ("SHH") as Liaison Counsel for the Class.

## I.   ARGUMENT

### A.   The BioSante Investor Group II ("BIG II") Does Not Trigger Presumptive Lead Plaintiff Status Because of Group Cohesion Problems and Improper Certifications

BIG II, consisting of Avraham Shaked, Sue Benson, and Raymond Skubel, is not entitled to presumptive lead plaintiff status because BIG II is not a cohesive group.[1] While BIG II meets the first statutory requirement to trigger presumptive status (largest claimed loss), BIG II's group cohesion problems preclude it from meeting the second requirement to trigger the presumption, "to otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Courts have consistently required evidence of cohesiveness among members, especially when they have no pre-existing relationship. *Bang v. Acura Pharms, Inc.*, No. C 5757, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11, 2011) (citing cases acknowledging that "a group of investors should be 'small and cohesive enough such that it can adequately control and oversee the litigation'") (citations omitted); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289 at *8 (N.D. Cal. Aug. 22, 2008); *see also Schriver v. IMPAC Mortg. Holdings, Inc.*, No. SACV 06-31 CJC, 2006 WL 6886020 at *8 (C.D. Cal. May 2, 2006) ("The Court agrees with *Gemstar* and other cases holding that groups of unrelated investors, while not per se impermissible lead plaintiffs under the PSLRA, are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-57 (S.D. Tex. 2002) (reviewing lead plaintiff group applications for those groups which affirmatively decided to work together and had agreed upon a decision-making structure).

Here, BIG II's joint declaration—the only evidence BIG puts forth to demonstrate any sort of group cooperation or understanding of litigation responsibilities for a lead plaintiff— *excludes* the member of the group with the largest losses. *See* Porritt Decl. at 5. Indeed, the declaration even concedes that Avraham Shaked, the missing third member of the group, did not

---

[1] Notably, BIG II appears to have overlooked BIG's filing entirely, entitling their responsive brief "BioSante Investor Group's Memorandum In Opposition to Mark Dale, Thomas Norgiel and Jeffrey Rennell's Motions for Lead Counsel." Indeed, BIG's filing is not mentioned once throughout the brief.

attend the conference call with counsel where the respective responsibilities of counsel and lead plaintiffs were discussed. Shaked's absence from the conference call not only renders everything said and agreed-to during the conference meaningless, but also suggests that Shaked *does not* agree to zealously represent the class in this litigation and calls into question whether a group was even formed to pursue this action in the first place. Another possible scenario is that Shaked did not want to sign the declaration because he wanted to litigate independently of the group, given that his losses overshadow those of the other two BIG II members. Either way, Shaked's lack of participation sets the stage for problems in group decision-making and ultimate guidance of the litigation, which is the whole purpose of having a lead plaintiff represent the class. Unlike BIG, which has demonstrated 100% participation in its conference call with proposed lead counsel and timely signed individual declarations outlining how the group would manage and control the litigation, BIG II has utterly failed to demonstrate even a modicum of group cohesion.

Alternatively, if the Court is inclined to find that BIG II is the presumptive lead plaintiff, Shaked's absence from the joint declaration and Skubel's improper certification[2] warrant limited discovery into the group's formation, ability and willingness to join together and manage the litigation. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery if they 'demonstrate[ ] a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'")

---

[2] In addition to cohesion problems, BIG II fails as a lead plaintiff candidate because one of its members, Raymond Skubel, did not sign his certification. "Each plaintiff seeking to serve as a representative party on behalf of a class **shall** provide a **sworn** certification, which **shall** be **personally signed** by such plaintiff and filed with the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(emphasis added); *see also Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319 (N.D. Ala. 2000) ("Only those plaintiffs who satisfy the certification requirement of the [PSLRA] subsection can serve as lead plaintiff.").

(quoting 15 U.S.C. § 78u-4(a)(3)(B)(iv)). BIG respectfully submits that these circumstances raise sufficient questions to warrant limited discovery. *See* 15 U.S.C. § 78-u-4(a)(3)(B)(iv) (permitting discovery when movant demonstrates a "reasonable basis" for a finding that plaintiff is incapable of adequately representing class); *see also Brown v. Biogen*, No. 05-10801-RCL, 2005 U.S. Dist. LEXIS 19350, at *7-8 (D. Mass. July 26, 2005) (granting discovery of lead plaintiff movant); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 847-48 (S.D. Ind. 1999) (granting limited discovery).

### B.      Norgiel and Rennell Do Not Trigger Presumptive Lead Plaintiff Status Because Their Loss Calculation Is Erroneous

In accordance with the statutory requirements, because BIG II has not triggered presumptive lead plaintiff status, the Court should next consider the movant with the purported second-largest loss, which is the Norgiel and Rennell group. *In re Cavanaugh*, 306 F.3d at 730 ("If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23."). Norgiel and Rennell similarly fail as the presumptive lead plaintiff, given that they include multiple errors in their loss calculations, inflating their losses on BioSante trades above and beyond their true recognized losses. As demonstrated in BIG's opposition memorandum, Thomas Norgiel's trade data claims that he made purchases of 25,000 shares on November 17, 2011, at prices from $4.51 to $4.73; however, the highest value of BioSante stock on November 17, 2011, was only $2.55. That error nearly doubles Norgiel's actual loss on the November 17, 2011, trades. The huge discrepancy in claimed versus actual losses created by this error alone calls into question the accuracy of all the group's trading data, but at the very least indicates that the ultimate loss calculation for the group is plainly wrong. *Nager v. Websecure, Inc.*, No. CIV.A

97-10662, 1997 WL 773717 at *1 at n. 1 (D. Mass. Nov. 26, 1997) (reported trade outside the daily range "may be explainable, but it cast sufficient doubt on Mr. Renzer's adequacy as a class representative plaintiff that he should be excluded from the group appointed to serve as lead plaintiffs"). Given these clear errors, the presumption is not triggered in Norgiel's and Rennell's favor.

In the alternative, in the event the Court is inclined to apply presumptive status to Norgiel and Rennell, BIG respectfully requests that competing movants should be allowed limited discovery to assess the scope of the inaccuracies in the loss figure and certifications for Norgiel and Rennell's motion. Limited discovery into Norgiel and Rennell's trading data to confirm trade dates, numbers of shares, and purchase/sale values would be quick and easy to accomplish and verify, and would illuminate any additional errors in the group's loss calculation. *See In re Cavanaugh*, 306 F.3d at 730; *see also Brown*, 2005 U.S. Dist. LEXIS 19350, at *7-8 (granting discovery of lead plaintiff movant); *Sakhrani*, 78 F. Supp. 2d at 847-48 (granting limited discovery). A request for limited discovery into this issue to clarify and confirm the actual loss figure in the face of demonstrated errors would ensure that the mandates and goals of the PSLRA lead plaintiff provisions are met in this case.

### C. BIG Meets the Requirements To Trigger the Statutory Presumption and Should Be Appointed Lead Plaintiff

Under the statutory formula, because the presumption is not triggered by BIG II or Norgeil and Rennell, the Court should next consider the lead plaintiff movant with the next largest claimed loss: BIG.[3] BIG meets the requirements to trigger the presumption because it has

---

[3] Movant Dale, with losses of merely $73,683.72, is the movant with the smallest losses and cannot trigger the rebuttable presumption in his favor, much less meet the statutory requirements to be appointed lead plaintiff.

the next largest financial interest in the outcome of the litigation and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B). As illustrated in the previously-submitted declarations, BIG is a small, cohesive group of sophisticated investors who will assertively and collaboratively direct counsel in this litigation.[4]

For the foregoing reasons, BIG's motion for appointment as Lead Plaintiff and approval of its selection of Lead Counsel KSF and Brower Piven, and Liaison Counsel SHH, should be granted and all competing motions should be denied.

DATED:          April 27, 2012          Respectfully submitted,

SUSMAN HEFFNER & HURST LLP

s/ Matthew T. Heffner

Matthew T. Heffner
30 N. LaSalle, Suite 1210
Chicago, Illinois 60602
Telephone: (312) 346-3466
Facsimile: (312) 346-2829
Email: mheffner@shhllp.com

*Counsel for BioSante Investor Group and Proposed Liaison Counsel for the Class*

DAVID A.P. BROWER
**BROWER PIVEN**
A Professional Corporation
488 Madison Avenue, 8th Floor
New York, NY 10004
Telephone: (212) 501-9000

---

[4] *See, e.g.*, Decl. of Michael O. Bobst at 2 ("On April 5, 2012, in furtherance of the formation of the BioSante Investor Group, I communicated with the other members of the group during a conference call that lasted approximately 25 minutes during which call I learned about the backgrounds of and the opportunity to ask questions of Messrs. Pappaylion, Lavoie, and Jacks, and Ms. Pham. I feel strongly that as a small, cohesive group, the five of us can effectively and efficiently prosecute these Actions together. I intend to do so, and the other members of the BioSante Investor Group have also expressed an intention to do so by, among other means, communicating with each other and with counsel, to the extent we determine necessary to fairly and adequately represent the interests of the Class.").

KIM E. MILLER
**KAHN SWICK & FOTI, LLC**
500 Fifth Avenue, Ste. 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com

and

LEWIS S. KAHN
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

*Counsel for BioSante Investor Group and Proposed Co-Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

/s/ Matthew T. Heffner

MATTHEW T. HEFFNER